IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CRISTOBAL RODRIGUEZ, JR., et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | 2:25-CV-090-BR |
| ENERTIS SOLAR, INC. and JASON MICHAEL TARKER, | § § § § | |
| Defendants. | § § | |

**<u>MEMORANDUM OPINION AND ORDER DENYING DEFENDANT JASON MICHAEL TARKER'S MOTION TO STAY AND LIMITING DISCOVERY</u>**

Before the Court is Defendant Jason Michael Tarker's ("Tarker") Motion To Stay. (ECF 24). By that motion, Tarker moves the Court to stay this matter until the conclusion of the trial phase of Tarker's criminal case pending in Childress County, Texas. (*Id*. at 5, 8). After considering the motion, briefing, and applicable case law, the Court DENIES Defendant Tarker's Motion To Stay, but will limit discovery as set forth below, through the conclusion of the trial phase (i.e., the guilt/innocence phase) of the criminal case.

**I.    BACKGROUND**

Tarker removed this case from the District Court of Childress County, Texas on April 23, 2025. (ECF 1); (*see also* ECF 10) (Tarker's Amended Notice of Removal). Plaintiffs' Original Petition seeks "wrongful death damages arising out of a collision which occurred on or about November 9, 2024," in Childress, Texas. (ECF 10-3 at 3). Plaintiffs allege that Tarker "was intoxicated…failed to control his vehicle" and crashed "into the vehicle occupied by Cristobal Rodriguez, Jr. and Raquel Garcia Rodriguez" resulting in Raquel Garcia Rodriguez's death and Cristobal Rodriguez, Jr. sustaining "serious injuries." (*Id*. at 3-4). Plaintiffs assert claims against

Tarker for negligence "and/or negligence per se which was/were a proximate cause of the wrongful deaths [sic] of Raquel Garcia Rodriguez and the damages that Plaintiffs sustained." (*Id*. at 4). Plaintiffs also assert claims against Defendant Enertis Solar, Inc. ("Enertis"), as Tarker's alleged employer, for negligent entrustment, negligent hiring, and negligent retention. (*Id*. at 3, 5).

On March 25, 2025, a Childress County, Texas Grand Jury, indicted Tarker on two counts of intoxication manslaughter and one count of intoxication assault for the same collision that is the basis of Plaintiffs' lawsuit. (ECF 24 at 1-2; Exhibit B at 1; Exhibit C).

## II.    LEGAL STANDARD

A district court may stay a civil proceeding "pending the completion of parallel criminal prosecution[] when the interests of justice require." *Langiano v. City of Fort Worth, Texas*, 131 F.4th 285, 290-91 (5th Cir. 2025) (cleaned up) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)). "Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *United States v. Gieger Transfer Serv., Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997) (cleaned up) (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)). "A district court…should only grant a stay when special circumstances exist, such as the need to avoid substantial and irreparable prejudice." *Langiano*, 131 F.4th at 290-91 (cleaned up) (quoting *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983)).

> A district court should stay the civil case only upon a showing of special circumstances, so as to prevent the defendant from suffering substantial and irreparable prejudice. In determining whether special circumstances warrant a stay, a court must measure the relative weights of competing constitutional and procedural interests.

*Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 397 (S.D. Tex. 2009) (internal citations omitted) (quoting *Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 668 (5th Cir. 1981)).

There are:

> several factors that should be considered in determining whether 'special circumstances' warrant a stay, including: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*Heller Healthcare Fin., Inc. v. Boyes*, No. 3-CV-1335-D, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

### III.   ANALYSIS

#### A.   Overlap

Factor one is "the extent to which the issues in the criminal case overlap with those presented in the civil case." *Heller*, 2002 WL 1558337, at *2. "[S]elf-incrimination is more likely if there is significant overlap." *Walker v. Wilburn* No. 3:13-CV-4896-D, 2015 WL 5873392, at *6 (N.D. Tex. Oct. 5, 2015). As such, this is considered one of the most important factors. *Alcala*, 625 F. Supp. 2d at 400.

The parties agree that there is an overlap between the wrongful conduct alleged in the civil case and the wrongful conduct alleged in the criminal case. Both the civil and criminal case arise from the allegations that Tarker was intoxicated while driving, which resulted in the automobile collision at issue here. Therefore, the Court finds that there is significant overlap between the civil and criminal case, and, as such, this factor weighs in favor of granting a stay.

### B. Status of the Criminal Case

Factor two is "the status of the criminal case, including whether the defendants have been indicted." *Heller*, 2002 WL 1558337, at *2. This factor weighs in favor of a stay when a "defendant is under indictment, rather than merely under investigation." *Id.* at *3. A plaintiff's concern that the criminal case will cause undue delay is weighed against Texas law's recognition that "[i]n all criminal prosecutions the accused shall have a speedy public trial…." Tex. Code Crim. Proc. art. 1.05; *see Walker*, 2015 WL 5873392, at *7 (collecting cases). Although the factors of overlap and status of the criminal case carry more weight, no single factor is dispositive. As such, courts have found that even when overlap and status of the criminal case weighed in favor of a stay, a partial stay or limits as to discovery was still merited. *See Walker*, 2015 WL 5873392; *Alcala*, 625 F. Supp. 2d at 391; *Librado v. M.S. Carriers, Inc.*, No. 3:02-CV-2095-D, 2002 WL 31495988 (N.D. Tex. Nov. 5, 2002).

Plaintiffs acknowledge that Tarker has been indicted. (ECF 29 at 3). Tarker argues that because he is indicted for the underlying events of both the civil and criminal actions, this factor weighs in favor of a stay. (ECF 24 at 4). Tarker relies on *Quintanilla v. Brown* to support his motion. (ECF 30); No. 4:24-CV-04160, 2025 WL 1287761, at *1 (S.D. Tex. May 2, 2025). The *Quintanilla* court found that the status of the criminal case weighed in favor of a stay. *Id.* at *2-3. However, the court's reasoning extended beyond the defendant's indictment and included the fact that a pre-trial hearing had occurred and the criminal court had "found probable cause to move forward." *Id.* at *6. Thus, the *Quintanilla* court held that "[a]s the criminal proceeding is moving forward, likely toward trial, the Court finds that this factor also weighs in favor of a stay." *Id*.

However, *Quintanilla* is also instructive when considering Plaintiffs' concerns that "it could take years for Tarker's criminal proceedings to be completed…." (ECF 29 at 3). An indictment is

an important step. Yet, as seen in *Quintanilla*, even more reassuring that a criminal case is proceeding towards a resolution are actions such as a pre-trial hearing and a criminal court's findings therein. Texas recognizes the right to a speedy trial; however, the duration of time that Texas courts deem acceptable to bring a criminal case to trial may still hinder Plaintiffs' interest in the prompt resolution of their civil claims. The parties have offered no further assurance that the criminal proceedings are moving forward beyond Tarker's indictment four months ago. Therefore, the Court finds that this factor does not weigh as heavily in favor of a stay.

### C. Plaintiffs' Interests

Factor three is "the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay." *Heller*, 2002 WL 1558337, at *2. "Generally a civil plaintiff has an interest in the prompt resolution of his claims." *SEC v. Mutuals.com, Inc.*, No. 3:03-CV-2912-D, 2004 WL 1629929, at *3 (N.D. Tex. July 20, 2004) (cleaned up) (quoting *SEC v. Mersky*, No. 93-5200, 1994 WL 22305, at *3 (E.D. Pa. Jan.25, 1994)). "[C]ourts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim." *Alcala*, 625 F. Supp. 2d at 397 (cleaned up).

Tarker relies on *Walker v. Wilburn* to argue that any prejudice to Plaintiffs is resolved by Tarker's request to stay this matter through the trial phase of the criminal case. (ECF 24 at 5); No. 3:13-CV-4896-D, 2015 WL 5873392, at *6 (N.D. Tex. Oct. 5, 2015). Additionally, Tarker relies on *Quintanilla* to argue that Plaintiffs' concern that the "memories of witnesses would fade over time and that this would impede the discovery process" is "insufficient to weigh in favor of a stay." (ECF 30 at 2).

Plaintiffs argue that Tarker's reliance upon *Walker* is misplaced because the parties in *Walker* had already completed discovery. (ECF 29 at 3). Additionally, Plaintiffs contend that if a complete

stay is granted then they would be delayed in discovery "so as to identify, and if necessary, join" the staffing agency that the parties' Joint Proposed Scheduling Order identified as a potential party in the case. (ECF 21 at 2-4) ("In order to avoid prejudice, Plaintiffs need to conduct discovery to, at a minimum, uncover if there are any additional parties that need to be joined prior to the statute of limitations.").

The court in *Walker* "generally agree[d] with [Walker's] assertion" that a stay would "delay…justice because memories fade and evidence becomes stale." 2015 WL 5873392, at *8 (collecting cases). However, that court found "this was not a concern…because the parties [had] already completed discovery" and had "therefore obtained and preserved the evidence [Walker] need[ed] for trial." *Id*. at *7-8. Thus, though granting a stay, the court in *Walker* recognized the general importance of timely discovery in alleviating any prejudice to a plaintiff.

Further, Tarker's reliance upon *Quintanilla* for this factor is misplaced. The *Quintanilla* court, contrary to Tarker's interpretation of the case, did not comment upon the plaintiff's concern that the memories of the parties and witnesses would fade over time. 2025 WL 1287761, at *2. Additionally, the defendant had requested a stay of only six-months, which is important in properly contextualizing *Quinanilla*'s analysis. *Id*. at *3. In the present matter, a complete stay while waiting on the criminal case to proceed to a determination of guilt or innocence will most likely extend well beyond six-months; thus, Plaintiffs' concern about the memories of witnesses is legitimate.

The automobile collision giving rise to both cases occurred on or about November 9, 2024, which was more than eight months ago. (ECF 10-3 at 3). As previously stated, this Court has received no further assurance that the criminal proceedings are moving forward beyond Tarker's indictment in March 2025. Thus, it is conceivable that, were the Court to grant a complete stay, it

could be many months, if not well more than a year, since the accident, or even the indictment, before discovery in the present matter were to commence. Therefore, the Court finds that this factor weighs against a stay.

### D. Tarker's Interests

Factor four is "the private interests of and burden on the defendants." *Heller*, 2002 WL 1558337, at *2. Within this factor, courts consider the prejudicial impacts that a parallel civil action may have upon a defendant's criminal defense. *Alcala*, 625 F. Supp. 2d at 397-98, 400-01.

> [I]f a court does not stay a parallel civil action, then the civil case might undermine the defendant's Fifth Amendment privilege against self-incrimination by expanding rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), by exposing the basis of the defense to the prosecution in advance of criminal trial….A defendant also has an interest in avoiding the quandary of choosing between waiving his Fifth Amendment rights and effectively forfeiting the civil case.

*Id*. at 400. "A defendant is more likely to face this quandary where the subject matter of both cases overlaps to a significant degree. *Id*. at 400-01.

Tarker argues that "there is a high likelihood that [his] Fifth Amendment privilege against self-incrimination will become an issue in this case, including in depositions, written discovery, and other pre-trial matters." (ECF 24 at 4). Therefore, Tarker contends that he would have to "make the difficult decision of fully defending and disclosing defense strategies…or putting on a skeleton defense in this civil action to protect [his] rights in the criminal case." (*Id*. at 6). Plaintiffs respond that "Tarker will be able to invoke his Fifth Amendment privilege against self-incrimination while the criminal case is pending and otherwise will be treated like any other civil litigant." (ECF 29 at 4).

In *Walker*, discovery was completed, which included the defendant's deposition and written discovery, when the court granted a stay. 2015 WL 5873392, at *6. The defendant had provided discovery without ever invoking her privilege. *Id*. Yet the *Walker* court held that the defendant had

not fully waived her Fifth Amendment privilege: "[I]t is possible that [defendant] will be required to testify at her civil trial about matters concerning which she did not waive the privilege and as to which she wishes to assert the privilege to protect her interests in her criminal case." *Id*. Like the *Walker* court, the Court recognizes the necessity of ensuring that appropriate protection is afforded to Tarker.

However, when considering the current posture of the entire civil matter, a complete bar in discovery is not necessary to protect Tarker's Fifth Amendment privilege. This is not a matter where either the state or federal government initiated both proceedings. *See Alcala*, 625 F. Supp. 2d at 402-03 (quoting *Sterling Nat. Bank v. A–1 Hotels Int'l, Inc.,* 175 F.Supp.2d 573, 579 (S.D.N.Y.2001)). "[T]he instant civil case has been brought by private entities and is not one in which the government itself has an opportunity to escalate the pressure on defendants by manipulating simultaneous civil and criminal proceedings, both of which it controls." *Id*. (cleaned up). The Court finds that given the discovery mechanisms in place, under both the Federal Rules of Civil Procedure and the Court's Standing Orders (*see* ECF 7 at 2-3), limited discovery is possible while still safeguarding Tarker's Fifth Amendment privilege. As such, this factor does not weigh as heavily in favor of a stay.

### E. The Court and the Public's Interest

Factor five is the interests of the courts. *Heller*, 2002 WL 1558337, at *2. A court "must also balance its own interests. One such interest is in judicial efficiency." *Alcala*, 625 F. Supp. 2d at 406. Although courts "have a strong interest in moving matters through the judicial system," granting a stay may still serve "the interests of the courts, because conducting the criminal proceedings first advances judicial economy." *Walker*, 2015 WL 5873392, at *9 (quoting *Alcala*, 625 F. Supp. 2d at 402-03). "Due to differences in the standards of proof between civil and criminal

prosecutions, the possibility always exists for a collateral estoppel or res judicata effect on some or all of the overlapping issues." *Jean v. City of Dallas, Texas*, No. 3:18-CV-2862-M, 2019 WL 4597580, at *5 (N.D. Tex. Sept. 22, 2019) (quoting *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 204 (Pollack, J.)).

> A court, then, must analyze whether, and to what extent, the outcome of the criminal proceeding would serve to simplify or "streamline" the issues and any possible discovery disputes. Of course, this all depends on the degree of overlap between the criminal and civil cases.

*Alcala*, 625 F. Supp. 2d at 406.

Factor six, that of public interest, typically only weighs against the grant of a stay where a civil case is pending and no criminal investigation has begun. *Meyers v. Pamerleau*, No. 5:15-CV-524-DAE, 2016 WL 393552, at *7 (W.D. Tex. Feb. 1, 2016). "The public has an interest in the resolution of disputes with minimal delay, but only to the extent that the integrity of the defendant's rights can be maintained." *Alcala*, 625 F. Supp. 2d at 406. "While the public certainly has an interest in the prompt resolution of the instant civil case, it also has an interest in protecting the constitutional rights of criminal defendants." *Meyers*, 2016 WL 393552, at *7.

Tarker argues that due to the relatively short duration of the case to date, a stay places no burden on the Court's management of its docket. (ECF 24 at 6). Regarding the public interest factor, Tarker argues that his "rights and the public interest in law enforcement outweigh the Plaintiffs' right to a prompt determination of the claims." (*Id*. at 7). Plaintiffs point out that "no trial date has been set in Tarker's criminal case" which could result in an "indefinite stay of proceedings." (ECF 29 at 4). As such, Plaintiffs contend that factor five weighs against a stay because the Court and the public have "an interest in the expeditious resolution of the [civil] case" and that "[t]here is no way to know how long a stay would last." (*Id*.).

The Court finds that factors five and six weigh against granting a stay (1) because the interests of the Court and the public would be satisfied by a limitation on discovery that protects Tarker's constitutional rights as a criminal defendant, and (2) because limited but ongoing discovery could promote the public's interests in the prompt resolution in the civil case and the Court's interest in judicial efficiency.

In summary, though the first factor weighs in favor of a stay, the other factors are either not determinative or weigh against a complete stay of proceedings in this case.

**F. The Terms of the Limited Discovery**

Tarker argues for a stay in this matter until the conclusion of the trial phase of the criminal case. (ECF 24 at 5, 8). Plaintiffs argue for a narrower limitation: "This Court has the discretion to limit discovery to matters that do not implicate Tarker's rights against self-incrimination." (ECF 29 at 4) (citing *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir.1962)). The Court agrees with Plaintiffs. *See Walker*, 2015 WL 5873392; *Alcala*, 625 F. Supp. 2d; *Librado*, 2002 WL 31495988, at *2; *Arevalo v. City of Farmers Branch, Texas*, No. 3:16-CV-1540-D, 2017 WL 1153230, at *14-15 (N.D. Tex. Mar. 28, 2017).

There are two defendants in this matter. Tarker's arguments for a stay rightfully center upon protecting his Fifth Amendment privilege, which the Court has found can be safeguarded with limited discovery. A complete stay of the case would prejudice Plaintiffs from proceeding in discovery as to Defendant Enertis, as well as with respect to non-party witnesses.

Accordingly, the Court will limit discovery such that Plaintiffs are precluded from taking Tarker's deposition through the conclusion of the trial phase (i.e., guilt/innocence) of the criminal case but may serve written discovery on Tarker. To the extent that he needs to do so, Tarker is allowed to assert his Fifth Amendment privilege within written discovery. Additionally, full

discovery will proceed as to Defendant Enertis. To the extent that it needs to do so, Defendant Entertis can, by objection and/or the process set forth in the Standing Orders, show that it "will or is likely to subject it to undue prejudice by reason" of Tarker's unavailability as a witness to Defendant Enertis "or to assist in its defense." *See Librado*, 2002 WL 31495988, at *3. Also, the parties may engage in any discovery related to Plaintiffs' claims and to the possible additional party. Finally, the parties may conduct other written discovery or depositions, including, but not limited to, the officer(s) that responded to the automobile collision, any accident reconstructionist(s), and any medical providers.

### IV.  JOINT ADVISORY TO THE COURT

The parties are ORDERED to file periodic joint advisories with the Court. The first advisory is due at the same time as their amended joint proposed scheduling order, which will be set by separate order, and then **every three months from the date of this order** (i.e. October 27, 2025, January 27, 2026, April 27, 2026, ect.). The advisories shall provide information as to the current status of the criminal case, that includes, but is not limited to, (1) the status of any plea negotiations, stated in such a manner as to not reveal any attorney-client privileged information in either this case or the criminal case, (2) any settings for a pre-trial conference, and (3) any trial date in that case.

### V.  CONCLUSION

Considering all of the above factors, the Court DENIES Defendant Tarker's Motion To Stay, but will limit discovery as set forth above, through the conclusion of the trial phase (i.e., guilt/innocence) of the criminal case. Additionally, the parties are ORDERED to file periodic joint advisories with the Court, as set out above.

IT IS SO ORDERED.

ENTERED July 25, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE